HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANGEL ALONSO COVARRUBIAS, an individual,

Plaintiff,

v.

BRINK'S, INCORPORATED, a foreign corporation; BRINK'S, INC. BRANCH #0128, a licensed armored security service of foreign corporation Brink's Incorporated; PITTSTON COMPANY, a foreign corporation; and TY BYRNE and "JANE DOE" BYRNE, and the marital community comprised thereof,

Defendants.

Case No. C05-5196 RBL

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

This matter comes before the Court on Defendant Brink's Motion for Summary Judgment. Dkt. #17-1. Plaintiff Angel Alonso Covarrubias ("Alonso")[1] claims the defendants discriminated against him because of his national origin by denying him training and a promotion, and eventually terminating him. Defendant Brink's, Inc. moves for summary judgment, arguing that Alonso's claims are barred by the applicable statute of limitations and that as a matter of law, he cannot establish the violation of state or

---

[1] All parties refer to plaintiff as Alonso or Mr. Alonso; therefore, the Court will do the same.

ORDER
Page - 1

federal discrimination laws. The Court sought and has reviewed additional briefing on the applicable limitations period. For the reasons set forth below, the Court GRANTS defendant Brink's motion for summary judgment.

## BACKGROUND

Brink's transports, protects, and stores coin, currency, negotiable instruments and other valuables. Declaration of Ty Byrne, Dkt. #18 ¶4 ("Byrne Decl."). To this end, Brink's dispatches armored trucks staffed by a Driver, a Messenger, and occasionally, a Guard. Byrne Decl. ¶5-6. The Driver operates the truck and remains separate from the container area of the vehicle. Byrne Decl. ¶11. The Messenger remains in the container area and has supervision over the crew. Byrne Decl. ¶13. Messengers also service ATM machines. Alonso Deposition, Dkt. #19-1 at 69 ("Alonso Deposition").

Servicing an ATM consists of removing a "cassette," which holds the cash, removing any remaining cash from it, and filling it with a full set of new cash. Alonso Dep. at 69. Each cassette is labeled and contains specific denominations. *Id*. at 79. A "crossload" occurs when the Messenger places an incorrect denomination in a cassette, for example, placing a set of $100 bills in a $20 cassette. *Id.* at 82-83.

Alonso was hired as a Driver in Seattle in September 2000. Alonso Dep. at 16. At the time, he was supervised by defendant Ty Byrne. Deposition of Ty Byrne, Dkt. #19-1 at 8 ("Byrne Dep."). Plaintiff had no complaints about his employment in Seattle. Alonso Dep. at 66. When Byrne was transferred to Brink's Tacoma branch in 2001, Alonso requested a transfer as well, which Byrne approved. EEOC Declaration of Angel Alonso Covarrubias, Dkt. 19-2 at 1 ("EEOC Decl."); Byrne Decl. at ¶ 16. Alonso was transferred in April 2001. Byrne Dep. at 8. Alonso's work appeared to be going well; by September 2001 he began training to become a Messenger, and signed a receipt acknowledging this. Alonso Dep. at 117.

Less than a year later, Alonso began to have trouble performing Messenger duties. From April 2002 through August 2003, Alonso received repeated letters warning him of returning late to the branch. Byrne Decl., Exh. F. On October 10, 2002, he was reprimanded for leaving $250,000 in cash in one of the Brink's trucks over a weekend. Byrne Decl., Exh. I. He claims that he was not responsible for the money left in the truck, but merely reported that it was there. Alonso Decl. at ¶9. However, this is not the only reprimand that Alonso received. On February 3, 2003, and February 11, 2003, he received reprimands for mixing currency. Byrne Decl., Exh. G, Exh. H. On February 3, he mixed currency and gave incorrect cash to a customer. Byrne Decl., Exh. G. On February 11, he dropped a cassette and mixed the money inside with other denominations. Byrne Decl., Exh. H. Alonso now claims that the money became mixed because the cassette was defective. Alonso Decl. ¶14. Finally, on August 13, 2003 Alonso crossloaded the Brink's ATM located at the Muckleshoot Casino. EEOC Decl. at 2. Alonso placed $100 bills in the $20 cassette. *Id.* The crossload was discovered five days later on August 18, and Alonso was terminated on August 24. Byrne Decl., Exh. B.

Alonso now alleges he was discriminated against due to his national origin, and claims damages under Title VII and the Washington Law Against Discrimination (WLAD). Although they are not identified in his complaint, Alonso believes he received disparate treatment due to his national origin as a result of the following discriminatory acts: the October 10, 2002 reprimand for leaving $250,000 in a truck over a weekend; the February 3, 2003 reprimand for mixing currency; and the February 11, 2003 reprimand for dropping a cassette and mixing currency. Defendant Brink's moves for summary judgment arguing that Alonso's allegations do not support a violation of federal or state discrimination laws, and that his claims are barred by the applicable statute of limitations. Brink's does not seek summary judgment on Alonso's breach of contract claim.

DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1980). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy*, 68 F.3d at 1221.

**A. Statute of Limitations of Plaintiff's Title VII and WLAD Claims**

As an initial matter, Brink's argues that Alonso's federal and state claims are barred by the applicable statute of limitations. 42 U.S.C. §2000e-5(1) requires that a plaintiff's Title VII claim must be filed within 300 days of the discriminatory event. Alonso was terminated on August 24, 2003, and filed his claim with the Washington State Human Rights Commission on June 16, 2004, so his claim for discriminatory discharge does fall within the 300-day limit. However, none of his other Title VII claims for disparate treatment fall within that time period. Therefore, only the termination is actionable under Title VII.

Plaintiff argues first that his Title VII claims are not time barred because they fall within the "continuing violation" theory. He then argues in his reply brief to the Court's request for additional briefing on the statute of limitations [Dkt. #34] that his claims are not time barred because they constitute a

hostile work environment. Alonso's hostile work environment theory is newly minted. He did not present it in either his complaint or his opposition to defendant's motion for summary judgment [Dkt. #22]. The mere mention of the term "hostile work environment" seems calculated to avoid the outcome telegraphed to the plaintiff by the Court's request for additional briefing on the issue of the statute of limitations. While the introduction of hostile work environment allegations would, if legitimate, change the contour of this debate, the Court finds that on the record established thus far, Alonso has not made out a prima facie case for a hostile work environment.

To succeed on a hostile work environment claim based on race or national origin, a plaintiff must demonstrate that 1) he was subjected to verbal or physical conduct based on his race or national origin; 2) the conduct was unwelcome; and 3) the conduct was sufficiently severe or pervasive as to alter the conditions of his employment and create an abusive work environment. *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005). Alonso has not succeeded in showing that he was subjected to verbal or physical conduct, that it was unwelcome and that it was pervasive enough to alter the conditions of his employment. Therefore, the Court will not consider this argument in Alonso's opposition to the motion for summary judgment.

The Supreme Court clarified what claims may or may not fall within the elements of a "continuing violation" theory in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The Court held that "discrete discriminatory acts are not actionable if time barred, even when they relate to acts alleged in timely filed charges." *Id.* at 102. A discrete act of discrimination is an act such as "termination, failure to promote, denial of transfer, or refusal to hire . . . ." *Id.* at 114. Each discrete act has its own statute of limitations, and each act "starts a new clock for filing charges alleging that act." *Id.* at 113. Since Alonso filed only one EEOC claim with the Washington State Human Rights Commission, for his termination and did not assert claims of discrimination as to the October 10, February 3, and February 11 reprimands, all of

the other acts which he claims were discriminatory are time barred. Moreover, any of the other acts for which he claims damages under 42 U.S.C. §2000e-5(1) are time barred, because he filed his complaint more than 300 days after the February 11, February 13 and October 10 reprimands.

The limitations period applicable to Alonso's WLAD claims is three years. RCW 4.16.080(2); *See also Antonius v. King County*, 153 Wn.2d 256, 261-62, 103 P.3d 729 (2004). Alonso filed his complaint on January 31, 2005. Therefore, any alleged discriminatory event that occurred after January 31, 2002 is actionable. The February 11 and 13, 2003 reprimands for dropping and mixing a cassette and giving incorrect cash to a customer, and for mixing currency, as well as the October 10, 2002 reprimand for leaving $250,000 in a truck over a weekend are not time barred.

Defendant's motion for summary judgment as to Alonso's Title VII claims for disparate treatment is GRANTED. Defendant's motion for summary judgment as to Alonso's Title VII claim and WLAD claim for discriminatory discharge on statute of limitations grounds is DENIED. Defendant's motion for summary judgment as to Alonso's WLAD claims for disparate treatment because they are time barred is DENIED.

**B. Alonso's Title VII and WLAD Claims for Discriminatory Discharge and WLAD Claims for Disparate Treatment**

Alonso's federal and state claims are analyzed under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kastanis v. Educ. Employees Credit Union*, 122 Wash.2d 483, 490 (1993). In *McDonnell Douglas*, the Supreme Court articulated a three-part test for assessing the burdens and order of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Second, if the plaintiff succeeds in demonstrating a prima facie case the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Third, should the defendant carry this burden, the plaintiff then has an opportunity to prove by a preponderance of the

evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id*. at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978).

### 1. Plaintiff's Discriminatory Discharge Claim

#### *a. Plaintiff's Prima Facie Case*

A plaintiff must first demonstrate a prima facie case in a claim for discriminatory discharge in order to survive summary judgment. To do so, a plaintiff must show that: 1) he belongs to a protected class; 2) he was doing satisfactory work; 3) he was discharged; and 4) his position was not eliminated after his discharge. *Gonzales v. Barrett Business Services, Inc.*, 2006 WL 1582380 (E.D.Wash.). The Ninth Circuit has consistently held that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," and "[a]t the summary judgment stage, the requisite degree of proof . . . does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (internal citations omitted); *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). While the "amount of evidence that must be produced . . . is very little," *Wallis* 26 F.3d at 889, the plaintiff must provide at least some evidence.

Here, Alonso has not even established a prima facie case of discriminatory discharge. Alonso is a member of a protected class, as he is of Mexican heritage. He was discharged, and his position was not eliminated after his discharge. However, Alonso cannot show that he was doing satisfactory work. Indeed, he does not even state in his declaration that his work was satisfactory. He provides no evidence to show his work was satisfactory. In fact, his employee file is replete with reprimands, beginning in 2002 and continuing through his termination in August 2003. He left $250,000 in a truck over a weekend, he

mixed currency on more than one occasion, and he crossloaded the Muckleshoot Casino ATM.

Because Alonso has not demonstrated that he was doing satisfactory work, he cannot demonstrate a prima facie case for discriminatory discharge. As such, Brink's motion for summary judgment as to plaintiff's Title VII and WLAD claims of discriminatory discharge is GRANTED.

*b. Defendant's Legitimate Nondiscriminatory Business Reasons*

However, even if Alonso had established a prima facie case for discriminatory discharge, his claim fails in the second and third steps of the *McDonnell Douglas* analysis. In the second step, Brink's must rebut the presumption of discrimination by producing evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 254. To this end, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id*. at 255. "The employer's burden is satisfied if he simply explains what he has done, or produc[es] evidence of legitimate, nondiscriminatory reasons." *Sweeney*, 439 U.S. 24, 25 (1978).

Brink's argues and provides evidence that it had legitimate, nondiscriminatory business reasons for terminating Alonso. First, Alonso was consistently late. It is true that when Byrne established the drive time requirements he did not account for rush hour delays, and his strict adherence to the drive times was unfair to everyone. However, there were still a number of reprimands in Alonso's file that showed he frequently returned late. Second, Alonso left $250,000 in one of the armored trucks over the weekend in 2002. Third, he was reprimanded twice in early 2003 for mixing currency and dropping cassettes. Finally, and most importantly, in August 2003 he crossloaded the Muckleshoot Casino ATM, which caused the casino to terminate its business relationship with Brink's.

This series of reprimands show an employee who is simply not up to the task he was asked to perform. Plaintiff argues that the reprimands he received, particularly the February 11 reprimand for mixing the money, were not well founded. He now states, although there is no mention of it elsewhere in

the record, that the cassette holder was defective, which caused the money to mix. Further, he claims that on the day he crossloaded the Muckleshoot Casino ATM, the money was misbundled prior to his entering it in the ATM machine. Alonso apparently makes these allegations in an attempt to show he was doing satisfactory work, and yet is still unable to provide any evidence to support them. This is, quite simply, insufficient to withstand a motion for summary judgment.

Brink's has met its burden of articulating a legitimate, nondiscriminatory business reason for terminating Alonso.

*c. Plaintiff's Burden of Establishing Pretext*

Once Brink's has demonstrated a legitimate, nondiscriminatory reason for his termination, the burden shifts back to Alonso to demonstrate that Brink's reasons for terminating him were pretextual. *See McDonnell Douglas*, 450 U.S. at 804. A plaintiff can show pretext either "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or directly, by showing that unlawful discrimination more likely motivated the the employer." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998), quoting *Burdine*, 450 U.S. at 256. However, the court must consider such evidence in total, considering both the direct and indirect evidence available. *Lyons*, 307 F.3d at 1113. Additionally, "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Proj. Agr. Improv. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001).

Here, plaintiff has provided no evidence that Brink's actions were pretextual in nature. Alonso disputes the reprimands in his employee file, arguing that he did not leave the $250,000 in the truck, that he mixed currency because the cassette was broken, and that the money that supplied the Muckleshoot Casino ATM was misbundled at the branch. Yet he provides no evidence of these mitigating circumstances, apart from conclusory statements in his declaration, which is insufficient under *Wallis*. 26 F.3d at 889. In order

to survive summary judgment, a plaintiff must "do more than establish a prima facie case and deny the credibility of the defendant's witnesses." *Wallis*, 26 F.3d at 889.

Alonso states in his declaration that he had never serviced the type of ATM used at the Muckleshoot Casino prior to August 13. Brink's records show that he had serviced that ATM at least once before in October 2002. Byrne Decl., Exh. E. Alonso argues that other employees made the same mistakes as he but were not terminated. Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Dkt. #22 at 5. Again, he has produced no evidence to support this claim, apart from his own deposition.[2] Moreover, of the three employees Alonso claims were not terminated for crossloding an ATM, two have no mention of crossloads in their files, and the third was under suspension for a crossload at the time he was terminated for a different reason. Byrne Dec. ¶ 35. Finally, it was defendant Byrne who supervised Alonso in Seattle, and who approved his transfer to Tacoma, to continue working with Byrne. Byrne Dep. at 8; Byrne Decl. at ¶ 16. Under the "same actor" theory, Byrne would not have hired Alonso and approved his transfer if he was opposed to working with Mexicans in the first place. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1286 (9th Cir. 2000).

Alonso has not demonstrated a prima facie case against Brink's. However, even if Alonso had done so, Brink's has shown that it had a legitimate, nondiscriminatory business reason for terminating Alonso's employment. Finally, Alonso has failed to show that Brink's reasons for terminating Alonso were pretextual. Therefore, Brink's motion for summary judgment on the issue of Alonso's alleged discriminatory discharge, under both the federal and state claims, is GRANTED.

### 2. Plaintiff's Disparate Treatment Claims Under the WLAD

Alonso also claims under the WLAD that Brink's discriminated against him because of his national origin by "shorting" his hours of pay, by denying him ATM training, and by denying him a

---

[2] Plaintiff refers to his deposition in his brief; however, he does not include the cited section of the deposition as an exhibit to his declaration.

promotion to Messenger. Complaint, Dkt. #1-1 ¶3.6. Each of the events plaintiff cites to demonstrate discrimination are discrete acts. *See Morgan*, 536 U.S. at 114. Each event is therefore examined individually under the *McDonnell Douglas* burden shifting analysis: plaintiff's establishment of a prima facie case, defendant's showing of a legitimate nondiscriminatory business reason for the action, and plaintiff's demonstration that the reason was pretextual. *McDonnell Douglas*, 411 U.S. at 802-804. The requirements for a prima facie case for each of the discrete discriminatory acts are the same, as Alonso claims that each action contributed to his disparate treatment due to his national origin.

In Washington, a plaintiff must establish a prima facie case of disparate treatment by showing that "1) he belongs to a protected class, 2) he was treated less favorably in the terms or conditions of his employment 3) than a similarly situated, nonprotected employee, and 4) he and the nonprotected comparator were doing substantially the same work." *Johnson v. DSHS*, 80 Wn.App. 212, 227, 907 P.2d 1223 (1996). Alonso clearly belongs to a protected class, and he was doing substantially the same work as other similarly situated, nonprotected employees, as he worked as either a Driver or a Messenger. However, he has not established that he was treated less favorably than a similarly situated, nonprotected employee in the terms or conditions of his employment, and thus, has not demonstrated a prima facie case for any of the three remaining discrete discriminatory acts.

*a. Shorting of Plaintiff's Wages*

Alonso first argues that Brink's discriminated against him by "shorting" his hours so he would be paid less. Neither party disputes that his hours were reduced. However, the wage discrepancies did not affect only Alonso. Deposition of Ronald Vose, Dkt. #19-1 at p. 53. Indeed, Ronald Vose, the Brink's branch's operations manager, testified that nearly every employee had been "shorted" hours. *Id*. Alonso makes no claim and provides no evidence to dispute this. As there is no genuine issue of material fact as to whether Alonso was shorted hours due to his national origin, he has not established a prima facie case for

disparate treatment, and Brink's motion for summary judgment on the issue of discrimination by shorting his hours is GRANTED.

### b. Denial of Training

Second, Alonso argues that he was denied training for Messenger duties due to his national origin. Complaint at ¶ 3.6. However, in the same paragraph he claims to have been denied training, Alonso makes the inconsistent allegation that he was denied a promotion for which he was qualified "within the first few months of employment." *Id*. Alonso was originally hired as a Driver. EEOC Complaint at 1. A Messenger's duties include servicing ATM machines by taking deposits out of the deposit section, replacing the ATM cassettes with full sets of new cash, and accounting for how much money is used to replenish the ATM. Alonso Dep. at 69. Ironically, Alonso claims he was denied a promotion to Messenger, a position for which he believes hew was well qualified shortly after he was hired. Complaint at ¶ 3.6. On the record before the Court, there is neither credible evidence that training was denied, nor credible evidence that Alonso himself believes training was denied.

Alonso has not demonstrated a prima facie case for his claim that he was denied training due to his national origin. He signed an acknowledgement of training in September 2001. Alonso Dep. at 117. He also states that on the day he crossloaded the Muckleshoot ATM he was being trained. Because he admits to having received training, Alonso has not demonstrated a prima facie case for disparate treatment due to his national origin, and, therefore, Brink's motion for summary judgment on the issue of disparate treatment by not providing training is GRANTED.

### c. Denial of Promotion

Finally, Alonso argues that he was not promoted as a result of his national origin. However, he fails to establish that he was treated less favorably than another, nonprotected employee. First, he was assigned Messenger duties on a part-time basis as early as 2002, and worked as a Messenger approximately

50% of the time. *See* Bryne Decl., Exh. D. Alonso was paid the same as other Messengers when performing those duties. *See id*. Alonso was also paid the same as other Drivers (the position for which he was originally hired) whenever he performed those duties. He claims he was discriminated against because he only received Messenger rate pay when he performed the duties of a Messenger, whereas the employees who had been promoted to Messenger received Messenger rate pay regardless of whether they worked as Messengers, Drivers or Guards. Alonso Decl. at ¶10.

Essentially, Alonso is complaining about not having been promoted quickly enough. This being the case, Alonso must show that other Drivers who are not members of a protected class were hired and promoted more quickly than he. And yet, he has made no effort to demonstrate this by use of evidence such as deposition testimony, declarations or exhibits, apart from his own declaration. He merely states, "I don't believe Mr. Byrne's representation that Boris Brown, Richard Elkins, Wayne Griffin, and Jonny Mejia served as Drivers for four or five years . . . before their promotions to messenger." Alonso Decl. at ¶4. This is insufficient. Moreover, Brink's provided substantive evidence that showed that the four other employees originally hired as Drivers were not promoted to Messenger for at least four years. Declaration of Alisa Freeman Alvarez, Dkt. #26, Exh. A. At the time of his termination, Alonso had been working for Brink's for three years. Thus, Alonso has not demonstrated that he was treated less favorably than a nonprotected employee.

As a result, plaintiff has not demonstrated a prima facie case for discrimination based on his national origin during the course of his employment by denying him a promotion. Therefore, Brink's motion for summary judgment as to its denial of a promotion based on Alonso's national origin is GRANTED.

CONCLUSION

ORDER
Page - 13

Defendant Brink's motion for summary judgment [Dkt. #17-1] is GRANTED as follows:

1. Plaintiff's Title VII claims for disparate treatment are DISMISSED because they are time barred.

2. Plaintiff's Title VII and WLAD claims as to discriminatory discharge are DISMISSED because he cannot meet his burden of establishing a prima facie case.

3. Plaintiff's WLAD claims for disparate treatment based on "shorted" hours, denial of training, and denial of promotion to Messenger are DISMISSED because he has not demonstrated a prima facie case.

4. Plaintiff's RCW 49.48.010 breach of contract claim was not addressed in the defendant's motion and remains for trial.

Dated this 3rd day of November, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE